ALBERT P. SMITH ET AL.

v.

BENJAMIN R. DEYOUNG.

CONTRACT—SERVICES.—The evidence in this case tending to show that the services for which plaintiff claims compensation were rendered by him as the employe of F. & R. and not as the servant of the defendant, and were a part of his duties under his employment by that firm, and were paid for by the salary he received from them, he is not entitled to recover therefor against the defendant.

ERROR to the Circuit Court of Cook county; the Hon. W. K. McALLISTER, Judge, presiding. Opinion filed January 7, 1880.

Messrs. SMALL & MOORE, for plaintiffs in error; that plaintiff should have been limited in his recovery to the bill of particulars, cited Marton v. McClure, 22 Ill. 257.

Plaintiffs' fourth instruction was argumentative, and should not have been given: Mosher v. Kitchell, 87 Ill. 22.

Instructions should not mis-recite the evidence: Frame v. Badger, 79 Ill. 441.

It is not error to assume in an instruction a fact over which there is no controversy: Moody v. Peak, 13 Ill. 343; Heartt v. Rhodes, 66 Ill. 351.

Instructions must be correct in themselves without reference to others: C. B. & Q. R. R. Co. v. Harwood, 80 Ill. 88; C. & A. R. R. Co. v. Murray, 62 Ill. 326; Baldwin v. Killian, 63 Ill. 550.

Mr. S. K. Dow, for defendant in error.

BAILEY, P. J. This was an action of assumpsit, brought by Benjamin R. DeYoung against John S. Wallace, on an account for work, labor and service. During the pendency of the suit said Wallace died, and thereupon his administrators, the plaintiffs in error, were substituted as defendants. A trial was afterwards had before the court and a jury, resulting in a verdict in favor of the plaintiff for $1,275, for which sum and costs the court below, after overruling the defendant's motion for a new trial, rendered judgment for the plaintiff.

The facts, as shown by the record, are substantially as follows: From some time in the year 1873 to April 16, 1876, the firm of Frisbie & Rappleye, consisting of Mortimer A. Frisbie and Nicholas B. Rappleye, were the Chicago agents of the Massachusetts Mutual Life Insurance Company, and were also engaged in loaning money for such persons as saw fit to employ them for that purpose. During all the time the plaintiff was in their employ as bookkeeper and cashier at a salary of $1,200 for the first year, $1,800 for the second, and $2,500 for the third. On the 16th day of April, 1876, said firm was dis-

Smith v. DeYoung.

solved, and for six months thereafter the business was continued by said Rappleye, during which time also the plaintiff remained in his employ in the same capacity at a salary of $150 per month. Afterwards Rappleye arranged for the plaintiff's employment by the insurance company at the same salary.

Said Wallace was the father-in-law of said Rappleye, was a man of large means, had frequent occasion to loan considerable sums of money, and efforts were accordingly put forth by said firm to secure his custom. Wallace was finally persuaded to make his headquarters at their office, and take any good commercial paper or acceptable loans which they might have; said firm however agreeing on their part to render him such clerical services as he might require in the way of statements, making out papers, figuring accounts, etc. Pursuant to this arrangement, Wallace had his office with Frisbie & Rappleye from some time in 1873 or 1874 down to the time of the dissolution of the firm, and afterwards with Rappleye while the business was being continued by him. During this time Wallace took large amounts of commercial paper from the firm, from which they realized considerable sums of money as commissions. Their transactions of this character with Wallace for the last year of the existence of the firm, amounted to about $200,000. Besides this, Wallace occasionally accommodated the firm by making personal loans of money to them.

The evidence shows that the plaintiff was instructed and required by his employers, Frisbie & Rappleye, as a part of his employment with them, at all times to do everything he could to assist Wallace in anything he wanted done. This seems to have been not only for the purpose of carrying out the arrangement between the firm and Wallace above mentioned, but also with the view of making Wallace feel himself under obligations to the firm, and to induce him to throw patronage into their hands. By the terms of his employment the plaintiff was required to perform services of the character of those he was instructed to render to Wallace. Rappleye testified that he was hired to do such things as the firm required—writing, figuring, and general office work, making out papers, deeds, bonds and mortgages, and whatever the firm had to do in the way of writing in the office.

During the time said Wallace had his office with Frisbie & Rappleye, and afterwards with Rappleye, the plaintiff rendered him a considerable amount of services of the character above indicated—such as making out papers, calculating interest on notes, collecting notes, counting his money and doing such business as a clerk and confidential man would do. Wallace at the time was a man quite advanced in years, and had partially lost his eyesight, and his affairs, as a consequence, required very constant and careful supervision on the part of the plaintiff. So far as appears, the services above described were mostly performed during ordinary business hours, and nearly all of them in the office of the plaintiff's employers. On one occasion, it is true, he went upon the market for Wallace in business hours and bought for him $30,000 in city bonds; and on one or two occasions he appears to have gone to Wallace's house in the evening at the request of the latter, for the purpose of transacting some business. In addition to the foregoing, the plaintiff was employed by Wallace to collect rents of certain property for about two years and a half. For these rents during this entire period, monthly settlements with Wallace were made by the plaintiff, and in each case his compensation for his services in relation thereto was retained by him. On one of the occasions when the plaintiff visited Wallace at his house and did writing which occupied him till a late hour of the night, Wallace offered the plaintiff five dollars for his trouble, which the latter declined to receive, whereupon Wallace insisted upon the plaintiff's taking it as a present to his wife.

After the dissolution of the firm of Frisbie & Rappleye, the plaintiff was employed by Wallace to make certain statements in relation to some notes in which Wallace was interested, and which were involved in a chancery suit pending in the Superior Court of Cook county, and also to perform certain services in the collection of said notes. For these services Wallace agreed to pay him the sum of $75, and a commission on said collections in case the judge of the court should allow the same. It appears that said commissions were not allowed, and no question is made by the defendant as to the right of the plaintiff to recover the $75 agreed to be paid him for making the statements.

Smith v. DeYoung.

The plaintiff in the account filed with his declaration, charges $1.000 per year for services rendered in making papers, figuring accounts, and attending to and looking after the business matters of Wallace from March 6, 1873, to March 6, 1877.  He also makes a charge of $404 for commissions on collections " as per agreement," and $100 for making statements in said chancery suit.

There is no view we are able to take of the evidence by which the verdict of the jury can be sustained.  It is manifest that much the larger portion of the damages awarded to the plaintiff by the jury is for services rendered in the office of Frisbie & Rappleye, and of Rappleye after the dissolution of the firm.  These services were rendered by him as the employe, not of Wallace, but of Frisbie & Rappleye.  They were a part of his duties under his employment by that firm, and were paid for by the salary he received from them.  It was competent for his employers to require him to perform services of this character for Wallace, and however faithful or pains-taking he may have been in performing them, he could not thereby entitle himself to compensation from Wallace.  All the services proved to have been performed by him outside of his employment by Frisbie & Rappleye, even construing the evidence in the light most favorable to him, can entitle him to no more than a small part of the damages awarded.  The verdict, then, being as to the amount of damages, unsupported by the evidence, the judgment must be reversed and a new trial awarded.

A number of points are made by the plaintiffs in error in relation to the rulings of the court below in giving and refusing instructions to the jury, and also in relation to the admission of evidence.  We have considered the observations submitted by counsel upon the points thus made, and are of the opinion that said rulings, when viewed in the light of the entire record, were in no respect erroneous.

The judgment will be reversed and the cause remanded.

Judgment reversed.

McALLISTER, J., took no part in the decision of this case.